**L.B. FOSTER COMPANY, Appellant**

**v.**

**CHARLES CARACCIOLO STEEL & METAL YARD, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 14, 2001.

Filed April 30, 2001.

Russell Montgomery, Altoona, for appellant.

Gerald Neugebauer, Ebensburg, for appellee.

Before JOHNSON, HUDOCK and HESTER, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from a judgment entered by the Court of Common Pleas of Blair County following a non-jury trial. We affirm in part and reverse in part and remand for further proceedings.

¶ 2 Appellant, L.B. Foster Company, runs a salvage business with a plant located in Bedford, Pennsylvania. In December of 1997 and January of 1998, Adam Himmel and Richard Lewis Riggle stole metal items from Appellant and sold them to Appellee, Charles Caracciolo Steel and Metal Yard, Inc. The thieves eventually pled guilty, in Bedford County, to multiple counts of theft and receiving stolen property. Himmel and Riggle admitted that they sold the stolen items to Appellee at its facility in Blair County. The Bedford County trial court sentenced Himmel to a term of probation and gave Riggle accelerated rehabilitative disposition. Both sentences were predicated on the defendants making installment restitution payments to Appellant in a total amount of $9,550.00.

¶ 3 Appellant subsequently filed a civil complaint against Appellee alleging that the Bedford County restitution order did not fully compensate it for the entire amount of the loss it sustained. Appellant therefore sought to recover $14,417.45, the remainder of its damages, from Appellee on the theory that Appellee purchased the stolen items from the thieves and thus is liable for the uncompensated portion of Appellant's losses. The Honorable Norman D. Callan conducted a non-jury trial in the matter on March 31, 2000. The trial court entered a verdict in favor of Appellant as to liability but assigned zero damages on the grounds that Appellant had not established a nexus between any losses that were not covered by the Bedford County restitution order and Appellee's purchases from the thieves.

¶ 4 Appellant filed timely post-verdict motions which the trial court dismissed on April 13, 2000. Judgment was entered on April 28, 2000, and Appellant's timely notice of appeal followed on May 18, 2000. This appeal presents two issues for our consideration:

A. Did the Court below err in ruling that [Appellant] did not prove its case because there was a possibility there might have been other thefts during the same period at [Appellant's] premises, and items may have been sold to parties other than [Appellee]?

B. Did the Court below err in finding that it could not determine damages because the individuals who stole items from [Appellant] were ordered to pay criminal restitution?

Appellant's Brief at 5.

¶ 5 We are bound by the trial court's findings of fact in an appeal stemming from a non-jury trial unless those findings are not based on competent evidence. *Triffin v. Dillabough,* 552 Pa. 550, 555, 716 A.2d 605, 607 (1998). The findings of a trial judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. *Turney Media Fuel, Inc. v. Toll Brothers, Inc.,* 725 A.2d 836, 841 (Pa.Super.1999). An abuse of discretion occurs:

when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Feden v. Consolidated Rail Corporation,* 746 A.2d 1158, 1161 (Pa.Super.2000). It is not the role of an appellate court to pass on the credibility of witnesses or to act as

the trier of fact. *Turney Media Fuel, Inc., supra.* In a non-jury trial, the fact-finder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. *Id.* Nonetheless, the trial court's conclusions of law are not binding on an appellate court. *Triffin, supra.* This is so because it is the appellate court's duty to determine whether the trial court correctly applied the law to the facts. *Id.*

¶ 6 Appellant first contends that the trial court erred in ruling that it failed to prove its case on the grounds that a possibility existed that thefts other than those attributable to Himmel and Riggle might have occurred. This is a misinterpretation of the trial court's ruling. In fact, the trial court's verdict was in favor of Appellant insofar as the trial judge did find Appellee liable in this case. *See* Trial Court Order, dated 3/31/00 and entered 4/7/00, at 2–3.

■ ¶ 7 As Appellant notes, Pennsylvania caselaw holds that one who purchases goods from a thief obtains no right to the property, as against the claims of the true owner, even if he is a good faith purchaser for value. *Linwood Harvestore, Inc. v. Cannon,* 427 Pa. 434, 437, 235 A.2d 377, 380 (1967). *See also Underhill Coal Mining Company v. Hixon,* 438 Pa.Super. 219, 652 A.2d 343 (1994) (discussing both Pennsylvania common law and the modifications to the common law imposed by the adoption of Pennsylvania's version of the Uniform Commercial Code). As previously noted, the trial court properly applied this caselaw and concluded that Appellant legally was entitled to recover from Appellee with regard to materials it purchased from the thieves. We agree with the trial court's resolution of the liability question.

■ ¶ 8 The crux of this appeal lies in Appellant's second argument, that the trial court erred in failing to award monetary damages predicated on Appellee's liability. In this regard, the trial court found that, although the testimony indicated Appellee purchased scrap from the thieves, the evidence was insufficient to establish that Appellee purchased finished goods from them. The trial judge thus concluded that there was no basis on which to award damages for Appellant's losses in this regard. Furthermore, the trial court found that the Bedford County restitution order was undifferentiated as to the property for which Appellant was to be compensated thereby. Our inspection of the certified record discloses that the trial court's factual findings are supported by evidence of record. However, we cannot agree with the trial court's legal conclusions.

¶ 9 The evidence adduced at trial establishes that Himmel and Riggle stole metal from Appellant, and that they sold to Appellee all of the items which they took. Riggle testified that he and his partner stole aluminum from Appellant, and stated that almost all of the items they took were pieces of scrap in a recycling dumpster located on Appellant's property. He also stated that most of the items they took, in addition to those from the dumpster, were pieces of scrap metal that were "cut up." N.T., 3/31/00, at 15. The testimony of Riggle and Himmel established that a court order was entered in Bedford County requiring the thieves to pay restitution to Appellant in a total amount of $9,550.00. However, no matter of record in the present case explains the basis on which the restitution was ordered, or distinguishes the items covered by the Bedford order. Nor was evidence produced of record indicating whether the thieves were meeting their responsibility to make payments on the restitution order.

¶ 10 Weight slips made out to either Riggle or Himmel by a representative of Appellee were entered into evidence. The

slips document the fact that Appellee purchased 10,154 pounds of scrap metal from the thieves. Furthermore, the weight slips and the testimony of Appellee's representative establish that Appellee paid Himmel and Riggle a total of $4,325.28 as "scrap value" for the metal purchased from them.

¶ 11 Herb Mitchell, a representative of Appellant, testified concerning the nature of the material stolen from Appellant in December of 1997 and January of 1998. Mitchell testified that not only scrap metal was stolen from Appellant. He also stated that pre-fabricated material in the form of aluminum highway railing, as well as pedestrian barrier railing, was taken. Mitchell testified that Appellant would have accepted scrap value for the cut metal pieces removed from its recycling dumpster, but that it would have sold the barrier railing only as "finished goods." In this light, Mitchell averred that the total value of the items stolen from Appellant was the "finished" price, and not simply the price of the scrap metal, which Appellee admits to having purchased from the thieves. Henry Crest, another employee of Appellant, testified that the pre-fabricated items, which were stolen, were prime inventory worth $14,585.64 over and above the value of the scrap taken from the recycling dumpster.

¶ 12 Charles Caracciolo testified on behalf of Appellee. He stated that he bought only scrap metal from the thieves and that he bought nothing that resembled finished goods. He testified that he is in the business of purchasing scrap and that he does not buy usable finished material. N.T., 3/31/00, at 39. Under cross-examination,

Caracciolo specifically stated that if a peddler brought him items that looked like they were brand new, he would ask questions as to the source of the material. However, the witness was unequivocal in stating that he never asked any questions of the thieves in this case because they brought him only scrap and no brand new finished goods. *Id.* at 41.[1]

¶ 13 Mr. Caracciolo stated that to the best of his recollection, and according to the "Weight Slips" he personally completed for the thieves, he purchased only scrap from Himmel and Riggle. As the witness stated, "It was scrap to me, yes, nothing good in what I seen." *Id.* at 49. Furthermore, Mr. Caracciolo testified, "There's not enough money in it for me to buy any stuff that's not scrap." *Id.* The witness differentiated between new product brought in to be scrapped by a company's representative or a contractor, and obvious scrap material brought in by a peddler. *Id.* at 55.

¶ 14 In light of all the testimony received, the trial court determined that Appellee bought pieces of scrap metal stolen from Appellant. However, the trial court concluded that there was no evidence of record to support Appellant's claim that Himmel and Riggle stole finished inventory in addition to pieces of obvious scrap, or that they ever sold such items to Appellee. Under these circumstances, the trial court found that Appellant failed to demonstrate that Appellee owed the $14,417.45 for finished inventory which Appellant claimed was not covered by the restitution order.

¶ 15 We agree with the trial court that the certified record lacks evidence that

---

1. Caracciolo explicitly testified that companies with which he deals will, from time to time, scrap finished goods that are obsolete. Under these circumstances, the material is not "finished goods," it is "scrap." He does not ask questions of corporate representatives with whom he is familiar as to why they are scrapping such items. However, when an individual peddler brings him finished goods, then he does question the source of the material. *See* N.T., 3/31/00, at 39–41.

would support the conclusion that Appellee purchased finished goods from the thieves. However, the evidence adduced at trial amply demonstrates that Appellee purchased scrap metal from the thieves with a minimum value of $4,325.28, the amount Appellee actually paid for the goods. Appellee's own weight slips demonstrate this fact.

■ ¶ 16 The trial court concluded that because a restitution order was entered in a different county against the thieves in the amount of $9,550.00, Appellant had no recourse against Appellee for the lesser amount of $4,325.28. This is an incorrect reading of our restitution statute. With regard to private remedies, Pennsylvania law states the following:

> **Preservation of private remedies.**—No judgment or order of restitution shall debar the owner of the property or the victim who sustained personal injury, by appropriate action, to recover from the offender as otherwise provided by law, provided that any civil award shall be reduced by the amount paid under the criminal judgment.

18 Pa.C.S.A. § 1106(g). This statute clearly provides that the criminal defendant who is the subject of a restitution order is entitled to an offset in a subsequently entered civil judgment for the amount of restitution ordered as part of the sentence in the criminal proceeding. The statute simply does not speak to the liability of a joint tortfeasor who is not the subject of a restitution order.

■ ¶ 17 Joint tortfeasors are parties who either act together in committing a wrong or whose acts, if independent of each other, unite to form a single injury. *Foflygen v. R. Zemel, M.D. (PC),* 420 Pa.Super. 18, 615 A.2d 1345, 1352 (1992). One is liable for harm resulting to a third person from the tortious conduct of another if he does a tortious act in concert with the other or pursuant to a common design with him. *Skipworth v. Lead Industries Association, Inc.,* 547 Pa. 224, 236, 690 A.2d 169, 174 (1997). Jointly liable defendants may have contribution rights between them. *Hileman v. Morelli,* 413 Pa.Super. 316, 605 A.2d 377, 384–85 (1992). However, the rights as between tortfeasors do not affect the plaintiff's right to collect his civil judgment from either tortfeasor. *Id.* As explained below, there is no doubt that Appellee must be deemed to be a tortfeasor. Notwithstanding Appellee's contentions to the contrary, Appellant's complaint clearly sets forth a cause of action against Appellee for the intentional tort of conversion. *See* ¶¶ 4–10. Moreover, as already discussed, the evidence adduced at trial sustains the factual allegations in the complaint.

■ ¶ 18 The classic definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super.2000). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. *Id.* It is fundamental that a good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner. *Underhill,* 652 A.2d at 345. *See Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896, 899 (1987) ("Ordinarily, there is no inconsistency between finding that a defendant acted in good faith and finding that he is a converter.") The general rule for chattels is that "a bona fide purchaser from a thief gets nothing." *Underhill,* 652 A.2d at 346. This is so because a converter has no title to the chattels, and thus can convey noth-

ing to a bona fide purchaser for value. *Id.* at 346.

¶ 19 In the present case, the trial court found Appellee liable to Appellant based on the purchase of the stolen scrap metal. The evidence of record clearly demonstrates that Appellee purchased 10,-154 pounds of scrap metal from the thieves, and that Appellee paid $4,325.28 for the stolen goods. These actions fit within the classic definition of the tort of conversion. *McKeeman,* 751 A.2d at 659 n. 3. Appellee is liable to Appellant for the value of the scrap metal. The problematic question of whether the thieves ever will pay even a portion of the restitution they have been ordered to pay Appellant does not reduce Appellee's liability to Appellant. *See Johnson v. Beane,* 541 Pa. 449, 456, 664 A.2d 96, 100 (1995) ("it is better for the wronged plaintiff to receive a potential windfall than for a tortfeasor to be relieved of responsibility for the wrong"). *See also Hileman,* 605 A.2d at 384–85 (although jointly liable tortfeasors may have contribution rights between them, this does not affect the plaintiff's right to collect his civil judgment from either tortfeasor).

¶ 20 Our law is clear that the measure of damages for conversion is the market value of the converted property at the time and place of conversion. *Bank of Landisburg,* 524 A.2d at 902.[2] The certified record discloses that Appellee paid $4,325.28 for the 10,154 pounds of scrap metal it purchased from the thieves. However, the record does not disclose whether this is the correct market value for the goods, or whether Appellee obtained the goods at a rate below the fair market value. Thus, we must remand the matter to the trial court to ascertain the proper value of the converted goods at the time and place of conversion. *See North-*

*craft v. Michener Associates, Inc.,* 319 Pa.Super. 432, 466 A.2d 620, 629 (1983) (in a case of conversion, once the issue of liability has been fairly determined, the matter may be remanded for a new trial limited to damages).

¶ 21 Appellee urges us to overturn our Supreme Court's ruling in *Wilhelm v. Uttenweiler,* 271 Pa. 451, 112 A. 94 (1920), as it pertains to the proper measure of damages in an action against a converter who purchased stolen equipment from a thief. The primary role of the Superior Court is to apply existing law to the cases that come before us. *Hatchard v. Westinghouse Broadcasting Co.,* 350 Pa.Super. 1, 504 A.2d 211, 222 (1986), *rev'd on other grounds,* 516 Pa. 184, 532 A.2d 346 (1987). It is not our function to attempt reversing viable Supreme Court rulings, no matter how ancient those decisions might be. *See Mountain Properties, Inc. v. Tyler Hill Realty Corp.,* 2001 PA Super 45, ¶ 13, 767 A.2d 1096 (2001) (Superior Court does not enunciate new precepts of law or expand existing legal doctrines; that is for the Supreme Court). *See also Commonwealth v. Shaffer,* 557 Pa. 453, 460 n. 6, 734 A.2d 840, 844 n. 6 (1999) (Superior Court's duty and obligation is to follow decisional law established by Supreme Court; a lower tribunal may not disregard the standards articulated by a higher court); *Commonwealth v. Randolph,* 553 Pa. 224, 230, 718 A.2d 1242, 1245 (1998) (Superior Court must apply, not evade, Supreme Court decisions).

¶ 22 Affirmed in part and reversed in part. The case is remanded for further proceedings consistent with this Opinion. Superior Court jurisdiction relinquished.

---

**2.** This view is not inconsistent with the position taken by the Restatement of Restitution.

*See* Restatement of Restitution § 154 (Value of Property Innocently Converted).