**HRANEC SHEET METAL, INC.,**
**A Pennsylvania Corporation,**
**Appellant,**

v.

**METALICO PITTSBURGH, INC., t/d/ b/a Metalico Assad Iron and Metals, also t/d/b/a Metalico Brownsville, and Metalico Neville Realty, Inc., Pennsylvania Corporations, Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 10, 2014.
Filed Dec. 18, 2014.

Gary N. Altman, Uniontown, for appellant.

Robert M. Linn, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and MUSMANNO, JJ.

OPINION BY SHOGAN, J.:

Appellant, Hranec Sheet Metal, Inc., appeals from the order granting the preliminary objections, in the nature of demurrers, of Appellees Metalico Pittsburgh, Inc. and Metalico Neville Realty, Inc. ("Metalico"). For the reasons that follow, we reverse.

Appellant is a Pennsylvania corporation engaged in the business of fabricating ductwork used for heating and air conditioning systems. In connection with that business, Appellant purchases and maintains an inventory stock of coils of stainless steel sheets that are used to fabricate this ductwork. The coils weigh thousands of pounds and are not movable except by heavy machinery. Appellant also maintains an inventory of aluminum in the same manner. Metalico owns and operates a scrap metal recycling facility in Brownsville, Fayette County, Pennsylvania.

Appellant filed a complaint against Metalico in the Court of Common Pleas of Fayette County alleging that certain of Appellant's own current or former employees had stolen coils of stainless steel from Appellant and then sold them to Metalico for processing as scrap. Complaint, 3/1/13, at page 2. Appellant claimed that on multiple occasions, Metalico purchased these new coils and violated the "Scrap Metal Theft Prevention Act."[1] Appellant asserted that Metalico had 1) negligently, 2) grossly negligently, and 3) intentionally "failed to take the necessary steps to determine if the stainless steel coils were stolen property," thereby making the theft of these coils possible. Complaint, 3/1/13, at ¶¶ 8–16.

Appellant subsequently filed an amended complaint for the "purpose of correcting the caption of this case to include the correct and proper name of [Metalico] previously listed under fictitious names in the caption." Amended Complaint, 5/2/13, at 1. The amended complaint asserted the same claims identified in the original complaint against Metalico and clarified that Appellant's employees had stolen aluminum in addition to stainless steel. *Id.* at 2.

Metalico filed preliminary objections to Appellant's amended complaint pursuant to Pa.R.C.P. 1028(a)(4). Preliminary Objections, 5/22/13. By order dated July 16, 2013, the trial court granted Metalico's preliminary objections. Trial Court Order, 7/18/13, at 1. The order also gave Appellant twenty days from the date of the order to file a second amended complaint. *Id.*

---

1. The actual name of the act is the Scrap **Material** Theft Prevention Act ("Act"). 73 P.S. § 1943.1 (emphasis added).

On July 29, 2013, Appellant filed a second amended complaint. Second Amended Complaint, 7/29/13. Appellant claimed that on at least twenty-two occasions between September, 2010, and May, 2011, Metalico purchased the stolen materials. *Id.* at ¶ 6. Appellant maintained that the value of the stolen property was $408,849.14. *Id.* at ¶ 8. Appellant contended that Metalico purchased the stolen materials in violation of the Act. *Id.* at ¶ 7. The second amended complaint set forth claims of conversion, negligence *per se,* and concerted tortious conduct. *Id.* at ¶¶ 9–29.

Metalico again filed preliminary objections pursuant to Pa.R.C.P. 1028(a)(4), asserting that: 1) Appellant had failed to establish the requisite causal connection between any alleged act or omission of Metalico and any alleged harm that Appellant had suffered; 2) Appellant had failed to allege the existence of any legally cognizable duty that Metalico owed Appellant; and 3) the Act does not confer a private right of action upon any individual. Preliminary Objections to Second Amended Complaint, 8/19/13, at ¶¶ 29–47. The trial court sustained Metalico's preliminary objections and dismissed Appellant's pleading for its failure to state any legally cognizable claim against Metalico. Trial Court Order, 1/2/14, at 1.

This timely appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. Did Appellant state sufficient facts to plead that a conversion occurred?
2. Is there a causal connection between the thefts and the fencing of the stolen goods?
3. Did Appellant state sufficient facts to plead that there was concerted action between the scrap yard and the thieves?

4. Does the Restatement of Torts (Second), Section 876, apply to this case?
5. Is a violation of the Scrap Material Theft Prevention Act Negligence *Per Se*?

Appellant's Brief at 3.

The standard of review we apply when considering a trial court's denial of preliminary objections is well settled:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Richmond v. McHale,* 35 A.3d 779, 783 (Pa.Super.2012).

Appellant addresses his first two issues together. Appellant's Brief at 8. Appellant maintains that the trial court erred in granting Metalico's demurrer with regard to the conversion claim because the controlling precedent of *L.B. Foster Co. v. Charles Caracciolo Steel and Metal Yard, Inc.,* 777 A.2d 1090 (Pa.Super.2001), specif-

ically holds that "all that needs to be proven at trial in this conversion case is that [Metalico] purchased the stolen goods." *Id.* Appellant asserts that, because it has attached as Exhibit 1 to the Second Amended Complaint the corporate records of Metalico showing that Metalico purchased the stolen goods, the claim of conversion has been established, and the trial court erred in granting Metalico's demurrer. *Id.* Appellant maintains that the "only real issue here is the value of the stolen goods." *Id.*

This Court has stated the following with regard to the tort of conversion:

The classic definition of conversion under Pennsylvania law is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.,* 751 A.2d 655, 659 n. 3 (Pa.Super.2000). Although the exercise of control over the chattel must be intentional, the tort of conversion does not rest on proof of specific intent to commit a wrong. *Id.* It is fundamental that a good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner. *Underhill [Coal Min. Co. v. Hixon,* 438 Pa.Super. 219], 652 A.2d [343,] 345 [ (Pa.Super.1994) ]. *See Bank of Landisburg v. Burruss,* 362 Pa.Super. 317, 524 A.2d 896, 899 (1987) ("Ordinarily, there is no inconsistency between finding that a defendant acted in good faith and finding that he is a converter.") The general rule for chattels is that "a *bona fide* purchaser from a thief gets nothing." *Underhill,* 652 A.2d at 346. This is so because a converter has no title to the chattels, and thus can convey

nothing to a *bona fide* purchaser for value. *Id.* at 346.

*L.B. Foster Co.,* 777 A.2d at 1095–1096.

The facts in *L.B. Foster Co.* are similar to those in this case. In that case, the appellant, L.B. Foster Company, ran a salvage business. *L.B. Foster Co.,* 777 A.2d at 1092. Two individuals stole metal items from L.B. Foster and sold them to Charles Caracciolo Steel and Metal Yard, Inc. ("Caracciolo"). *Id.* The thieves eventually pled guilty to multiple counts of theft and receiving stolen property, admitting they sold the stolen items to Caracciolo. Despite evidence that Caracciolo purchased the items in good faith, this Court determined that Caracciolo was guilty of the tort of conversion based on the fact that he purchased the stolen scrap metal. *Id.* at 1096.

Turning to the case *sub judice,* Appellant alleged in its second amended complaint that Metalico had a duty not to commit the tort of conversion and "[b]y assisting the employees in converting the stolen coils into money, [Metalico] acted in concert with the employees who removed the coils from [Appellant's] property for the specific purpose of selling them to [Metalico]." Second Amended Complaint, 7/29/13, ¶¶ 13, 15. Given this Court's holding that "[i]t is fundamental that a good faith purchaser of goods from a converter is also a converter and must answer in damages to the true owner," *L.B. Foster,* 777 A.2d at 1095, it is irrelevant for purposes of this claim whether Metalico suspected wrongdoing by the individuals selling the chattel to Metalico. All that is necessary, and consistent with *L.B. Foster,* is that Metalico purchased the stolen property. Appellant has attached evidence as Exhibit 1 to its second amended complaint establishing Metalico's multiple purchases from the thieves. As such, we are constrained to conclude that Appellant has

established a *prima facie* claim of conversion and that the trial court erred in granting Metalico's preliminary objection in the nature of a demurrer to this claim.

Appellant next presents argument on his third and fourth issues together in his brief. Appellant's Brief at 10. Appellant contends that the "concerted tort" line of cases, enacting provisions of the Restatement (Second) of Torts, section 876, also clearly places liability on Metalico for the harm resulting from their "fencing" of the stolen goods. *Id.* Appellant asserts that if Appellant's employees had not been able to receive cash for the stolen coils of metal with no questions being asked there would have been no thefts. *Id.* at 11. Appellant further contends that Metalico paid cash for stolen material and that it either knew or should have known that the material was stolen. *Id.*

 We first note that this Court has addressed the applicability of section 876 of the Restatement (Second) of Torts under various circumstances, and our Supreme Court has expressly adopted these "interpretations" of section 876. *Sovereign Bank v. Valentino*, 914 A.2d 415, 421–422 (Pa.Super.2006). Thus, a concerted tortious conduct claim is a viable cause of action in Pennsylvania. *Id.* at 422.

Section 876 of the Restatement (Second) of Torts addresses the tort of civil aiding and abetting, which is also known as concerted tortious conduct:

### § 876. Persons Acting in Concert

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

\* \* \*

### Comment on Clause (a):

a. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

\* \* \*

### Comment on Clause (b):

d. Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass (see Illustrations 4 and 5) and when it is merely a negligent act. (See illustration 6). The rule applies whether or not the other knows his act is tortious. (See Illustrations 7 and 8). It likewise applies to a person who knowingly gives substantial aid to another

who, as he knows, intends to do a tortious act.

\* \* \*

**Comment on Clause (c):**

e. When one personally participates in causing a particular result in accordance with an agreement with another, he is responsible for the result of the united effort if his act, considered by itself, constitutes a breach of duty and is a substantial factor in causing the result, irrespective of his knowledge that his act or the act of the other is tortious. Thus each of a number of trespassers who are jointly excavating a short ditch is liable for the entire harm done by the ditch, although each reasonably believes that he is not.

Restatement (Second) of Torts § 876 (1977) and comments on clauses (a), (b), and (c).

Section 876 is a "specific application" of the rule stated in section 875 of the Restatement. Restatement (Second) of Torts § 875 (1977), comment; *Sovereign Bank*, 914 A.2d at 421. Section 875 addresses the liability of contributing tortfeasors:

**§ 875. Contributing Tortfeasors— General Rule**

Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

Restatement (Second) of Torts § 875.

▮ In reviewing the claims made by Appellant in his second amended complaint, and presuming those claims to be true per our standard of review, we consider whether Appellant established a *prima facie* claim of concerted tortious conduct that can survive the preliminary objection in the nature of a demurrer. Appellant's second amended complaint includes the following assertions:

10. [Metalico] should have known that the new, unused, coils of stainless steel, and the new, unused aluminum, were stolen property, particularly since there were multiple such sales for which [Metalico] paid in cash.

11. [Metalico] negligently failed to take the necessary steps to determine if the stainless steel coils and aluminum were stolen property.

12. As such, [Metalico's] actions made these thefts possible. Such acts already have been declared by the Pennsylvania legislature to be improper concerted action, in fact a crime by the very passage of the [Scrap Material Theft Prevention Act] itself.

13. [Metalico] has a duty not to commit the common law tort of conversion.

14. [Metalico] has a statutory duty to comply with the Scrap [Material] Theft Prevention Act, one such duty, among others in the Act, specifically being to ascertain the true owner of this material before they paid to purchase it. The failure to comply with these statutory duties constitutes negligence *per se* and makes it liable to the party harmed.

15. By assisting the employees in converting the stolen coils into money, [Metalico] acted in concert with the employees who removed the coils from [Appellant's] property for the specific purpose of selling them to [Metalico].

Appellant's Second Amended Complaint, 7/29/13, ¶¶ 10–15.

▮ Relevant to the query is the determination of whether Metalico knowingly acted in concert with the thieves in stealing the metals from Appellant. As stated previously, "the agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." Restatement (Second) of Torts, § 876, Comment on clause (a). Given Ap-

pellant's allegations, a review of the Act is helpful to our analysis.

We first note the following finding of the General Assembly in enacting the Act:

> In a preamble to Act 2008, Oct. 9, P.L. 1408, No. 113, effective in 60 days [Dec. 8, 2008], "[t]he General Assembly finds that:
>
> "(1) Copper, aluminum, steel and other metal commodity thefts rise as the price of metal property increases.
>
> "(2) Scrap processors and recycling facility operators may serve as unknowing conduits for the disposition of stolen metal property and may also be victims of theft.
>
> "(3) Individuals have found it to be more financially advantageous to sell used beer kegs to a scrap processor or recycling facility operator as opposed to returning the kegs to the distributor where they were rented.
>
> "(4) This act is needed to ensure appropriate documentation of transactions to assist law enforcement agencies to identify, recover and return stolen property to its owner and to ensure, as reasonably as possible, that scrap processors and recycling facility operators are less likely to be used as conduits for the liquidation and disposal of stolen metal property."

73 P.S. § 1943.2, Historical and Statutory Notes.

**2.** "Scrap processor" is defined as:

> An owner, operator or employee who, from a fixed location, utilizes machinery and equipment for processing and manufacturing ferrous or nonferrous metallic scrap, paper scrap, plastic scrap, rubber scrap or glass scrap into prepared grades and whose principal product is sold as a raw material in the manufacture of new products.
> 73 P.S. § 1943.2

**3.** "Recycling facility operator" is defined as:

Furthermore, the Act imposes several obligations on scrap processors[2] and recycling facility operators.[3] In the case *sub judice,* based on the record, Metalico meets the definition of a recycling facility operator.

A recycling facility operator is required to collect and maintain various types of information for certain transactions. Specifically, the Act provides:

> **§ 1943.3. Identification requirements for sale of scrap materials to scrap processors and recycling facility operators**
>
> **(a) General rule.**—A scrap processor and recycling facility operator shall collect the following information for all transactions by a seller of restricted material under [73 P.S. § 1943.5] and from any other seller when the purchase of scrap material from the seller exceeds $100:
>
> (1) A photocopy of the driver's license of the seller.
>
> (2) The seller's and buyer's signature for each transaction.
>
> (3) The license plate number of the motor vehicle the seller operates at the time of the transaction.
>
> (4) Written permission of the seller's parent or legal guardian, if the seller is under 18 years of age.
>
> (5) The date and time of the transaction.

> An owner, operator or employee who operates a facility employing a technology that is a process to separate or classify municipal waste and who creates or recovers reusable materials that can be sold to or reused by a manufacturer as a substitute for or a supplement to virgin raw materials. The term does not include a person who operates a transfer station or landfill for solid waste, composting facility or resource recovery facility.
> 73 P.S. § 1943.2

(6) A description of the scrap material included in the transaction, including the weight of the scrap material and the amount paid to the seller.

**(b) Tracking the transaction.**—A scrap processor and recycling facility operator shall, when payment is made in cash, develop methods of tracking a transaction that obtains the seller's signature on a receipt for the transaction. The receipt shall include a certification that the seller is the owner or authorized seller of the scrap material.

\* \* \*

**(d) Maintenance of records.**—The information required by this section shall be maintained by the scrap processor or recycling facility operator for a minimum of two years from the date of the transaction.

73 P.S. § 1943.4. Section 1943.5 defines "restricted materials" as follows:

**§ 1943.5. Restricted materials**

A scrap processor and recycling facility operator may purchase the following scrap material only if the purchase occurs with a commercial enterprise:

(1) New production scrap or new materials that are a part of a manufacturing process that are being sold by an individual, not a company.

(2) Full sized, new materials, such as those used in construction, or equipment and tools used by contractors.

(3) Commercial metal property.

(4) Metallic wire that has been burned in whole or in part to remove insulation, unless the aggregate value is less than $100.

(5) Beer kegs.

(6) Detached catalytic converters.

(7) Railroad materials.

73 P.S. § 1943.5.

■■■ Here, because the transactions involved "restricted material," namely the new, unused, commercial-sized coils of stainless steel and aluminum, and the transactions exceeded $100, Metalico was required to comply with the provisions of 73 P.S. § 1943.3. Specifically, section 1943.3(b), providing for tracking the transaction, requires that "the receipt shall include a certification that the seller is the owner or authorized seller of the scrap material." 73 P.S. § 1943.3(b). It is clear that the General Assembly, in enacting the Act, intended to deter the sale of stolen material to scrap processors, and placed on the recycling facility operators an obligation to require the seller to certify that he/she was the owner or an authorized seller of the scrap material. There is no evidence of record establishing that Metalico required the sellers to complete this certification. Arguably, had Metalico complied with this requirement, perhaps the seller would refuse to complete the certification, thereby alerting Metalico as to the stolen material, or dissuading the sellers from returning to Metalico for future sales of the stolen property.

Also, as noted, section 1943.5 mandates that the recycling facility operator shall purchase the following scrap material only if the purchase occurs with a commercial enterprise: [4]

(1) New production scrap or new materials that are a part of a manufacturing process that are being sold by an individual, not a company.

---

4. A "commercial enterprise" is defined as:

A corporation, partnership, limited liability company, single proprietorship, association, State agency, political subdivision of the Commonwealth, public corporation or any other legal or commercial entity.

73 P.S. § 1943.2.

(2) Full sized, new materials, such as those used in construction, or equipment and tools used by contractors.

(3) Commercial metal property.

73 P.S. § 1943.5(1–3). The materials purchased by Metalico in this case, new, industrial-sized coils of stainless steel and aluminum, meet the definition of these three subsections. There is no evidence that Metalico ensured that these purchases occurred with a commercial enterprise. Instead, Metalico simply made cash payments, each payment in the amount of thousands of dollars, to the individuals who presented Metalico with the materials.

In addition, the Act requires the recycling facility operator to create and maintain a permanent record with a commercial enterprise in order to establish a commercial account, as follows:

### § 1943.4. Commercial accounts

**(a) Duty to create and maintain.**—Every scrap processor and recycling facility operator must create and maintain a permanent record with a commercial enterprise, including another scrap metal business, in order to establish a commercial account. The record shall, at a minimum, include the following information:

(1) The full name and Federal or State tax identification number of the commercial enterprise or commercial account.

(2) The business address and telephone number of the commercial enterprise or commercial account.

**(b) Additional information.**—The record for each commercial enterprise maintained by the scrap processor or recycling facility operator shall document every purchase and receipt of ferrous or nonferrous metal and commercial metal property. That documentation shall include, at a minimum:

(1) The date, time and value of the property being purchased or received.

(2) A description of the predominant types of property being purchased or received.

**(c) Effect of establishing commercial account.**—Once a commercial account is established, if no financial transaction occurs between the scrap processor or recycling facility operator and the person delivering scrap material, then the scrap processor or recycling facility operator need only maintain a photocopy of the driver's license of the person delivering the scrap material to comply with this subsection.

**(d) Financial transactions.**—Once a commercial account has been established, if a financial transaction occurs between a scrap processor or recycling facility operator and a person delivering the scrap material, the scrap processor or recycling facility operator shall obtain the following before completing each transaction:

(1) A photocopy of the driver's license of the person delivering the scrap materials.

(2) The license plate number of the vehicle transporting scrap material.

(3) The telephone number of the commercial account.

(4) Confirmation that the person delivering the scrap material is authorized to receive a check or cash on behalf of the person or entity providing the scrap material. The confirmation shall consist of written, signed authorization from the owner or officer of the commercial enterprise stating that the person delivering the scrap material is designated to receive payment for the scrap material.

(5) An acknowledgment of receipt of cash payment, signed by the person

delivering the scrap material and receiving the cash payment.

73 P.S. § 1943.4.

Appellant satisfies the definition of "commercial enterprise" and Metalico was thus required to establish a commercial account for property received. Appellant asserts that Metalico failed to comply with these requirements. Second Amended Complaint, 7/29/13, at ¶ 7. Glaringly absent from Metalico's pleadings is a denial of these allegations. A fact-finder could conclude, based on these facts, that Metalico was aware that they were purchasing stolen property. The nature of the property, especially its size, newness and considerable value, would arguably make Metalico at least suspect that the individuals had stolen the property, and possibly from the same organization. If Metalico were to argue that they believed that the individuals who were selling the property were authorized sellers on behalf of the entity, then they still failed to comply with the Act in failing to create a "commercial account."

It is alleged that Metalico made twenty-two purchases of this material over the course of nine months. Second Amended Complaint, 7/29/13, at ¶ 6. Because Metalico repeatedly made purchases from the former employees and consistently failed to comply with the dictates of the Act, we find that it would be a reasonable conclusion that Metalico knew, or should have known, that the metal property was stolen. Metalico appears to have made no effort to confirm that the individuals were authorized to deliver the material on behalf of Appellant, the "commercial enterprise;" it failed to create and maintain a "commercial account;" it paid the individuals thousands of dollars per transaction in cash; and it failed to comply with various other provisions of the Act. Thus, viewing Metalico's conduct in the best possible light,

they, at the very least, took the position of consistently failing to inquire as to this constant supply of new materials and, concurrently, failed to comply with the requirements of the Act. Such intentional ignorance is not sufficient to shield Metalico from liability under the concerted tort statute. Restatement (Second) of Torts, §§ 875, 876; Sovereign Bank, 914 A.2d at 421–422.

Accordingly, Appellant has established a *prima facie* case that Metalico was acting in concert with the individuals sufficient to sustain a claim for concerted tortious conduct under section 876 of the Restatement (Second) of Torts. Moreover, by Metalico's becoming complicit in this "arrangement," a fact-finder could reasonably conclude that Metalico caused Appellant's injury by encouraging the individuals to return with additional stolen materials. In effect, the prior purchases "caused" the subsequent thefts: the individuals knew that they would not be questioned by Metalico regarding the material and that they would simply collect their cash payments. Restatement (Second) of Torts § 875; Sovereign Bank, 914 A.2d at 421–422. Consequently, we conclude that the trial court improperly granted Metalico's preliminary objection in the nature of a demurrer to this cause of action.

■ In its final claim, Appellant maintains that Metalico's violation of the Act was negligence *per se*. Appellant's Brief at 12. Appellant asserts, in support of this claim, that the purpose of the statute was to protect the interests of a group of people from a specific type of theft, specifically the theft of valuable metal material individuals typically attempt to fence at scrap yards. *Id.* at 15–16. Appellant also contends that the Act applies to Metalico's conduct and Metalico's conduct violates the Act. *Id.* at 15. Appellant further contends that the evidence of record establishes that

Metalico was the proximate cause of Appellant's loss. *Id.* at 17.

 In addressing a claim for negligence *per se*, this Court has stated the following:

The concept of negligence *per se* establishes the elements of duty and breach of duty where an individual violates an applicable statute, ordinance, or regulation designed to prevent a public harm. However, a plaintiff, having proven negligence *per se* cannot recover unless it can be proven that such negligence was the proximate cause of the injury suffered.

*Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa.Super.2014.)

 This Court has defined negligence *per se*, as follows:

[Negligence *per se* is] conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. However, a court will not use a statute or regulation as the basis of negligence *per se* where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

In order to prove a claim based on negligence *per se*, the following four requirements must be met:

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Mahan v. Am–Gard, Inc.*, 841 A.2d 1052, 1058–1059 (Pa.Super.2003) (citations and quotations omitted).

Applying the standard for a claim of negligence *per se* to the facts as set forth in Appellant's second amended complaint, we conclude that Appellant has set forth a *prima facie* case for this claim. We agree with Appellant's assertion that the purpose of the statute is to protect the interest of a group of individuals as opposed to the public generally. As noted previously, the historical and statutory notes to the Act reflect that the General Assembly found that as the price of metal property increases, so too do thefts of these commodities. 73 P.S. § 1943.2, Historical and Statutory Notes, Act 2008–113 legislation, (1). Additionally, the General Assembly found:

(4) This act is needed to ensure appropriate documentation of transactions to assist law enforcement agencies **to identify, recover and return · stolen property to its owner** and to ensure, as reasonably as possible, that scrap processors and recycling facility operators are less likely to be used as conduits for the liquidation and disposal of stolen metal property.

*Id.* at (4) (emphasis added). As such, we are compelled to conclude that the General Assembly did indeed intend to protect the interests of a group of individuals: the owners of valuable metal property. Thus, Appellant's claim has established the first element of the negligence *per se* cause of action.

With regard to the second element, it is clear that the Act applies to Metalico. As discussed previously, Metalico meets the definition of "recycling facility operator" as defined in the Act. Additionally, the third

prong is met because the evidence of record establishes that Metalico violated the dictates of the Act. Appellant has attached documentation to its second amended complaint that Metalico indeed conducted these repeated purchases from Appellant's former employees. Appellant has alleged that Metalico violated many provisions of the Act. Metalico has made no claims, nor produced any evidence that it, in fact, complied with the requirements of the Act. Accordingly, Appellant has established the third prong of its claim for negligence *per se*.

Finally, for reasons outlined previously, we conclude that Appellant has submitted evidence sufficient to allow a fact-finder to conclude that Metalico's conduct, in violation of the Act, was the proximate cause of Appellant's injuries. As such, Appellant has presented claims sufficient to establish a *prima facie* claim of negligence *per se*. Therefore, the trial court erred in granting Metalico's preliminary objection in the nature of a demurrer to this claim.

For the reasons set forth above, we conclude that the trial court erred in granting Metalico's preliminary objections in the nature of demurrers to Appellant's second amended complaint and as a result, dismissing Appellant's complaint. Thus, the trial court's order is reversed. The matter is remanded for proceedings consistent with this Opinion.

Order reversed. Case remanded. Jurisdiction relinquished.