J-A12027-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANNE B. COVALESKY A/K/A ANNE B. KAVALIAUSKAS, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF SYLVESTER COVALESKY A/K/A SYLVESTER E. KAVALIAUSKAS AND BERNARD COVALESKY, | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : : : | |
| v. | : : | |
| RUTH COVALESKY AND PHILLIP COVALESKY, | : : : : | |
| Appellants | : | No. 340 MDA 2014 |

Appeal from the Order entered January 14, 2014,
Court of Common Pleas, Lackawanna County,
Civil Division at No. 60069 of 2003

BEFORE: BOWES, DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.:                    **FILED JUNE 10, 2015**

Appellants, Ruth Covalesky ("Ruth") and Phillip Covalesky ("Phillip") (collectively "Appellants"), appeal from the order entered on January 14, 2014 by the Court of Common Pleas of Lackawanna County. For the reasons that follow, we affirm.

We summarize the relevant facts and procedural history underlying this appeal as follows. Sylvester Covalesky ("Sylvester") and his brother Joseph Covalesky ("Joseph") were the joint owners of approximately $450,000 worth of U.S. Savings Bonds ("bonds"). When Joseph died on March 7, 2001, Sylvester became the sole owners of the bonds. Prior to

Joseph's death, Sylvester and Joseph's sister, Anne Covalesky ("Anne"), gave the bonds to Ruth, who was Sylvester's, Anne's, and Joseph's sister-in-law,[1] for safekeeping. At that time, Joseph was in the hospital, Anne was having surgery and would likewise be in the hospital, and Sylvester's health was deteriorating following his diagnosis with Parkinson's disease. The bonds remained in Ruth's possession after Joseph's death.

At some point in 2001, Sylvester executed a durable power of attorney appointing Anne as his attorney-in-fact and Ruth as Anne's secondary successor. Ruth was to serve as Sylvester's attorney-in-fact only if Anne was no longer competent to serve in that capacity. On August 7, 2003, after Ruth had taken Sylvester to the hospital, Ruth cashed Sylvester's bonds and deposited the money in a joint account in her and Sylvester's name, despite Anne being competent to serve as Sylvester's attorney-in-fact at that time.

On August 21, 2003, Sylvester executed a will bequeathing his entire estate to Anne, and in the event she pre-deceased him, to his nephew, Bernard Covalesky, Jr. ("Bernard"), Anne's son. In that will, Sylvester also named Anne the executor of his estate.

In late August 2003, Attorney Douglas P. Thomas ("Attorney Thomas"), Anne's lawyer, learned from PNC Bank that Ruth had liquidated Sylvester's bonds and deposited the proceeds in Ruth and Sylvester's joint

---

[1] Ruth was the wife of Victor Covalesky ("Victor"). Victor predeceased Sylvester, Anne, and Joseph.

bank account. Anne was able to recover all of the roughly $450,000 worth of liquidated bond money and placed it into a bank account in her name. Anne testified that she spent all of the bond money, though it is unknown exactly how she spent it. N.T., 6/19/12, at 97.

Because Ruth liquidated the bonds in 2003, Sylvester incurred approximately $320,480 worth of taxable income from the redeemed bonds, resulting in an $89,691 tax liability on his 2003 tax return. *See* N.T., 6/20/12, at 254; Plaintiff's Exhibit 6. Both parties agreed that the tax liability that resulted from Ruth's liquidation of the bonds was $89,691. *See* N.T., 6/20/12, at 254-55.

Sylvester and Anne filed a complaint against Ruth and Phillip, Ruth's son, on October 15, 2003. Sylvester subsequently died on October 30, 2003. On January 7, 2005, Anne amended the complaint to add herself as the executor of Sylvester's estate and to add Bernard as a party to the suit. In the complaint, Anne and Bernard sought, inter alia, damages for the tax liability Sylvester incurred resulting from Ruth liquidating his bonds. On June 19 and 20, 2012, the trial court held a nonjury trial on the case. Following trial, but prior to the trial court's decision, Anne died on December 28, 2012. On September 6, 2013, the trial court issued a nonjury decision pursuant to Rule 1038 of the Pennsylvania Rules of Civil Procedure finding, inter alia, that Ruth illegally and improperly liquidated Sylvester's bonds because Ruth had no power to act as Sylvester's power of attorney so long

as Anne was competent to do so. Nonjury Decision, 9/6/13, at 22-24. The trial court further found that because of Ruth's conversion of the bonds, Sylvester incurred an $89,691 tax liability, which the court ordered Appellants to return to Sylvester's estate. *Id.* at 24, 26.

On September 12, 2013, Appellants timely filed post-trial motions pursuant to Rule 227.1 of the Pennsylvania Rules of Civil Procedure. In their post-trial motions, Appellants argued that the trial court erred in determining the amount of damages that they owed Sylvester's estate stemming from the liquidation of his bonds and the resulting tax liability. *See* Defendant's Motion for Post-Trial Relief, 9/12/13, ¶¶ 36-50; N.T., 12/10/13, at 5. On January 10, 2014, the trial court denied Appellants' post-trial motions. On February 6, 2014, Appellants filed a timely notice of appeal.

On appeal, Appellants raise the following four issues for our review and determination:

> 1. Whether the trial court committed an error of law and/or abuse of discretion by disregarding all of the expert's testimony regarding tax liability related to the income from the bonds, including, but not limited to that based upon the trial court's hypothetical question, when the expert's testimony was the only testimony or evidence presented regarding income taxes associated with liquidating bonds.
>
> 2. Whether the trial court committed an error of law and/or abuse of discretion by requiring Appellant[s] to return the entire $89,691.00 in tax loss for the income from the bonds to the Appellee[s] when [Anne] actually received and spent all bond income.

3. Whether the trial court committed an error of law and/or an abuse of discretion when it applied the increased risk of harm standard in an equity action where negligence was not claimed or established.

4. Whether the trial court committed an error of law and/or an abuse of discretion when it applied the unclean hands doctrine to the Appellants in this case and basing its decision requiring Appellant to reimburse the entire $89,691.00 tax loss, at least in part, on the misapplied doctrine.

Appellants' Brief at 4.[2]

We begin by acknowledging our standard of review for a nonjury proceeding:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the fact[-]finder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

---

[2] We reordered the issues Appellants raise on appeal for ease of review.

*Agostinelli v. Edwards*, 98 A.3d 695, 704 (Pa. Super. 2014) (quoting *Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012)).

For their first issue on appeal, Appellants argue that the trial court erred by disregarding the expert testimony of Paul Murphy ("Murphy"), a certified public accountant, regarding the tax liability associated with the liquidation of U.S. Savings Bonds. *Id.* at 11-18. Murphy testified that if Ruth had not cashed the bonds in August 2003 and they had remained in Sylvester's estate when he died two months later in October 2003, there would have been two tax options. N.T., 6/20/12, at 240-41. The first option would have been for Sylvester's estate to report the income upon redeeming the bonds and to pay the resulting tax. *Id.* The second option, and the one most people choose, would have been to pass the bonds along to Anne, the beneficiary of Sylvester's estate, have her cash the bonds, and then she would have to report the income on her individual tax return and pay the tax. *Id.* at 241. Murphy stated that the second option creates the lesser tax burden because when the estate redeems the bonds and pays tax on them, that income is taxed in the highest tax bracket when the estate has $9,350.00 or more in income for the year. *Id.* at 241-42, 251. When the beneficiary redeems the bonds and pays the resulting tax liability, the income is taxed in the beneficiary's tax bracket, and an individual does not

fall within the highest tax bracket until that person's income reaches $311,950 for the year. *Id.*

Murphy further testified, through a hypothetical question asked by the trial court, that if the bonds had not all been cashed in one year, the tax consequences would have been different. *See id.* at 248-49. The hypothetical questioning was as follows:

> Q. Assume for purposes of discussion, I am going to give you a hypothetical, you have so many variables, to be honest with you, I am going to be the fact finder in this case and your testimony is not helping me.
>
> A. Okay.
>
> Q. So I am going to try to ask you a [hypothetical] and it may help.
>
> A. Sure.
>
> Q. Let's assume, for purposes of my [hypothetical], that these bonds were not liquidated in August of the year of Sylvester's death 2003 when he died in October of 2003.
>
> So let's assume that he dies in October and these bonds are as they originally were; could you have cashed half in 2003 and half in 2004 because the estate could be open for the calendar years, kept yourself below the [$311,000] [sic] made the pass through more tax advantageous to the recipients?
>
> A. That's correct.

*Id.* at 248-49.

Based on the hypothetical question posed by the trial court, Murphy stated that the tax loss, assuming Anne fell in the same tax bracket as Sylvester, would have been less than the $89,691 Sylvester actually paid if Anne, as Sylvester's beneficiary, had been able to cash the bonds over a two-year period following Sylvester's death. *See id.* at 249-60. Murphy estimated the tax liability in that scenario to be $78,562, which was an $11,135 difference between what Sylvester actually paid as a result of Ruth improperly redeeming the bonds in August 2003 ($89,691) and what would have been paid if the bonds if Anne had been able to cash them over a two-year period following Sylvester's death. *See id.* at 259-60.

Because Sylvester died only two months after Ruth improperly redeemed his bonds, Appellants argue that they should only have to pay the difference between the $89,691 Sylvester actually owed and the amount Anne would have paid in taxes, assuming she would have redeemed the bonds over a two-year period following Sylvester's death. *See* Appellants' Brief at 11-18. Because Anne's income from 2003 is unknown, and as a result, so is her tax bracket, Appellants ask us to vacate the portion of the trial court's order requiring Appellants to return all of the $89,691 and remand the matter to the trial court to determine the actual income tax Anne would have incurred if she had redeemed the bonds over the course of a two-year period following Sylvester's death. *See id.* at 13-14.

The trial court found not credible the conclusion reached by Murphy as to how Sylvester's bonds would have been taxed if they had been redeemed following his death. Final Decision and Order on All Motions for Post-Trial Relief, 1/14/14, at 10-11. The trial court explained:

> [The] expert testimony by CPA Murphy is factually inadequate because his testimonial assumptions are unsupported by the evidence presented and found to be credible. Mr. Murphy speculated that either the estate or the beneficiary in receipt of the bonds would ultimately have had to pay taxes. He speculated that the flow through method directly to the beneficiary would be most economical but we are without guidance as to what that ultimate beneficiary tax bracket actually was. There is simply no evidence of record of the recipient's tax bracket nor is there evidence of whether that receipt did take place over one year or two.

*Id.* We agree.

"It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence." *Brown v. Trinidad*, 111 A.3d 765, 771-72 (Pa. Super. 2015). Regarding expert testimony, our Supreme Court has held:

> An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture. … To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion,

- 9 -

based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.

*Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968) (quotations and citations omitted). Thus,

expert testimony is incompetent if it lacks an adequate basis in fact. *See Viener v. Jacobs*, 834 A.2d 546, 558 (Pa. Super. 2003). "While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise." *Id.* Rather, "[an expert's] assumptions must be based upon such facts as the [factfinder] would be warranted in finding from the evidence." *Id.*

*Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 617 (Pa. Super. 2009), *aff'd*, 10 A.3d 267 (Pa. 2010).

The trial court committed no abuse of discretion in determining that the conclusion Murphy reached through responding to the trial court's hypothetical was speculative and unsupported by the record. Murphy's conclusion was reliant on the assumption that Anne, once she received Sylvester's bonds as his beneficiary, would have redeemed Sylvester's bonds in two equal amounts in 2003 and 2004.[3] Murphy's conclusion did not

---

[3] Appellants make a bald assertion that Sylvester's bonds were non-transferable and that his estate would have had to redeem the bonds to pass the money to Anne. *See* Appellants' Brief at 7. This argument is waived as

account for any of the other different scenarios in which Anne may have ultimately chosen to redeem the bonds. During his testimony, Murphy acknowledged that rather than immediately redeeming the bonds, Anne could have chosen to redeem the bonds incrementally. *See* N.T., 6/20/12, at 246. For example, Murphy conceded that Anne could have liquidated $50,000 in 2003, $50,000 in 2004, and $50,000 in 2005, etc., or in any other increments over the course of the rest of her life. *See id.* at 246-48. Additionally, Murphy admitted that the tax consequences of incrementally redeeming the bonds would have been entirely different from the $78,562 figure he adduced in response to the trial court's hypothetical and that he could not determine what those amounts would be without more information. *Id.* at 246-47.

Moreover, there is no evidence of Anne's income for 2003 and 2004 and thus, there is no evidence as to what her tax bracket was for 2003 and 2004. *Id.* at 249. Based on our review of the record, Murphy based his conclusion on the assumption that Anne, like Sylvester, had little to no income in 2003. *See id.* Consequently, there is no record support for the $78,562 figure Murphy came up with in response to the trial court's hypothetical.

---

Appellants did to raise the argument before the trial court. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")

Murphy's testimony with regard to what was, in his opinion, the most tax efficient way to immediately redeem Sylvester's bonds was speculative and did not account for the many ways in which Sylvester or Anne could have redeemed the bonds had Ruth not improperly done so. Thus, we can find no error in the trial court's decision not to rely on Murphy's conclusion on this issue. Therefore, Appellants are not entitled to relief for their first issue.

For their second issue on appeal, Appellants argue that the trial court erred in ordering Appellants to reimburse Sylvester's estate for the total tax liability Sylvester incurred resulting from Ruth's improper liquidation of Sylvester's bonds when Anne was able to recover all of the approximately $450,000 that Ruth liquidated. Appellants' Brief at 13. Appellants assert that requiring them to pay all of the income tax when Anne recovered all of the money was "manifestly unreasonably and has no basis in the law." *Id.* Appellants complain that the trial court's decision gave Anne a windfall because she did not have to pay any tax on the redeemed bond money. *Id.*

The trial court found that Ruth had converted Sylvester's bonds and consequently, ordered Appellants to reimburse the $89,691 tax loss that Sylvester incurred due to Ruth converted the bonds. *See* Nonjury Decision, 9/6/13, at 23-24. Regarding the tort of conversion, this Court has stated the following: "The classic definition of conversion under Pennsylvania law is 'the deprivation of another's right of property in, or use or possession of, a

chattel, or other interference therewith, without the owner's consent and without lawful justification.'" ***HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.***, 107 A.3d 114, 119 (Pa. Super. 2014) (quoting ***McKeeman v. Corestates Bank, N.A.***, 751 A.2d 655, 659 n.3 (Pa. Super. 2000)). Appellants' do not contest the trial court's determination that Ruth converted Sylvester's bond's and therefore, we find no error with the trial court's decision to order Appellants to pay the damages Sylvester incurred from the conversion, i.e., the $89,691 tax liability.

Additionally, Appellants' argument that the trial court's decision allowed Anne to take the bond money tax-free is unavailing. There is no support in the record for Appellants' argument that Anne received the approximately $450,000 worth of Sylvester's redeemed bond money tax-free. Anne did admit to recovering the liquidated bond money and putting it in an account in her name around October 2003. ***See*** N.T., 6/19/12, at 97; Defendant's Exhibit 17. The record indicates, however, that Anne wrote a check for $80,000 towards paying the $89,691 tax liability stemming from Ruth's liquidation of Sylvester's bond funds. Plaintiff's Exhibit 7.[4] Therefore, Appellants' argument that Anne received Sylvester's redeemed bond money tax-free is not supported by the record.

---

[4] Sylvester's estate filed an extension for his 2003 tax return and along with the filing was a check, written by Anne, for $80,000, which was the amount estimated at that time for Sylvester's 2003 tax liability. ***See*** Plaintiff's Exhibit 7. The record does not contain any evidence of how the remaining $9,691 worth of tax liability was paid.

Based on our conclusion that the trial court did not err in ordering Ruth to reimburse Sylvester's $89,691 tax liability because Ruth caused the tax liability by converting Sylvester's bonds, we do not need to address Appellants third and fourth issues on appeal, which argue that the trial court erred in applying the increased risk of harm standard and doctrine of unclean hands to support ordering Appellants to pay the tax liability. As the trial court did not err by requiring Appellants to pay the $89,691 tax liability incurred when Ruth improperly redeemed Sylvester's bonds, we have no basis on which to afford Appellants any relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015