J-S37033-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ORBIT STONES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| 3KD MARBLE AND GRANITE, INC. | : | No. 2199 EDA 2023 |

Appeal from the Judgment Entered December 12, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2021-02466

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED APRIL 21, 2025**

Orbit Stones, Inc. ("Orbit") appeals from the judgment entered in favor of 3KD Marble and Granite, Inc. ("3KD") following a non-jury trial in Orbit's action to recover payments for material it sold to 3KD.[1] We affirm.

The trial court summarized its factual findings as follows:

. . . [Orbit] is a wholesale distributor of granite. Orbit sells marble slabs to stone fabricators and installers. . . . [3KD] is a stone fabricator and was Orbit's customer between 2014 and July[] 2019. Orbit sold and delivered stone slabs to 3KD . . ..

[In 2016, a then-]new employee of Orbit, Vijay Kundur ("Kundur")[,] as a salesman[,] approached 3KD's owner, Kleber Dos Santos ("Dos Santos")[2] to start a business relationship with Orbit. Dos Santos had [previously] been a customer of Kundur [when Kundur w]as a salesperson for [a] prior employer.

_____

[1] Orbit has separately appealed a similar judgment involving sales of materials to a different party, Atlantis Granite, LLC. We address that appeal at J-S37034-24.

[2] In its brief, 3KD refers to Dos Santos as "Renato."

Consequently, Dos Santos began to purchase from Orbit. Kundur was the exclusive Orbit salesperson. Dos Santos dealt with Kundur solely and directly. Dos Santos would call Kundur's cell phone or have his secretary call Orbit's office to place orders. Dos Santos had no business relations with Orbit and never met Orbit's owner, Srinivas Mandava ("Mandava"). Mandava was never introduced to Dos Santos as the owner. Mandava did not collect payments and was never present during Orbit deliveries to 3KD.

Kundur was solely responsible to ensure deliveries occurred to 3KD and to collect payment for Orbit. When Orbit made deliveries to 3KD, Kundur arrived in an Orbit Stones truck to collect payment. 3KD's secretary would sign the invoice. If Kundur was not present during a delivery, he would visit 3KD's warehouse later that same day or the following day for payment by check or cash.

Generally, this was the accepted practice between 3KD and Orbit. Kundur had to collect payment before another order could be released to 3KD because 3KD had to cut the material to a customer's specifications. Therefore, a cut slab could not be returned to the manufacturer.

Early in their business relationship, 3KD paid Orbit for the stone by check at the time of delivery. As their business developed, Kundur would accept payment by postdated check, debit or credit card, and cash. Kundur would give 3KD a ten percent (10%) discount for cash payment.

At times, Mandava and Kundur would refer family and friend[s] to 3KD for kitchen renovations. Both Mandava and Kundur would credit 3KD's account for that work.

In July of 2019, Mandava discovered that Kundur was stealing from Orbit. Kundur would take Orbit's material (stone slabs), deliver the slabs to a customer without invoices and keep the money. Mandava contacted the police who then started an investigation. In October of 2019, the District Attorney's office filed criminal charges against Kundur for theft. . . . Kundur was accepted into ARD with the condition that he would have to pay restitution to [Orbit] in the amount of $100,000[.00].

Trial Court Opinion, 11/6/23, at 1-4 (footnotes omitted).

After Mandava discovered Kundur's thefts, Mandava arranged a meeting with Dos Santos in July 2019. Mandava asserted 3KD owed Orbit $72,219.65 for outstanding balances on invoices from 2016 through 2019. Dos Santos maintained he had paid Kundur cash and was entitled to credits for services 3KD provided to Kundur. Mandava and Dos Santos eventually agreed 3KD's services to Kundur would not be credited, and by the end of the meeting, Dos Santos authorized Orbit to charge $500.00 a week on 3KD's credit card. 3KD paid Orbit approximately $15,500.00 through this arrangement.

In May 2021, Orbit filed a complaint against 3KD alleging 3KD owed an outstanding balance of $58,593.22. Orbit and 3KD entered into a pretrial stipulation, which contained, among other matters, a table that listed numerous invoiced amounts dating back to 2016, 3KD's payments by check, and the alleged outstanding balances on each invoice, as well as the total outstanding balance. *See* Trial Exhibit 1, Stipulation ¶ 25.

In May 2023, the matter proceeded to a non-jury trial, at which Orbit presented testimony from Mandava and introduced into evidence the pretrial stipulation, as well as documentation supporting Mandava's accounting of the outstanding balance owed by 3KD. *See* Trial Exhibits A-C. Mandava testified that 3KD usually paid Orbit by check and sometimes by credit or debit card, and neither he nor Orbit accepted cash payments. *See* N.T., 5/8/23, at 10-11, 37. Dos Santos testified that 3KD commonly paid Kundur cash upon delivery of materials and had to make payments before Orbit would send another order to 3KD. *See id*. at 88-89; *see also id*. at 99-100 (Dos Santos

asserting that he paid cash more than forty percent of the time and generally wrote checks as "security" for bulk orders of materials). Dos Santos explained he authorized the $15,500.00 in credit card payments to Orbit because Orbit refused to credit 3KD for services on behalf of Kundur. **See id**. at 97.

The trial court found against Orbit and in favor of 3KD. **See** Verdict, 5/17/23, at 1 ("It is the finding of th[e trial c]ourt that [Orbit] failed to satisfy the burden of proof. [Orbit] failed to present credible evidence"). Orbit filed post-trial motions and supplemental post-trial motions, and 3KD filed a response. The trial court denied Orbit's post-trial motions and affirmed its verdict. **See** Order, 7/24/23, at 1. Orbit filed a notice of appeal within thirty days of the entry of the order denying its post-trial motions[3] and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court authored a Rule 1925(a) opinion stating it found "no credible evidence was presented as to the amounts due" and "Orbit failed to prove each invoice exists and that amount is due." Trial Court Opinion, 11/6/23, at 13.

_____

[3] Orbit improperly appealed from the order denying its post-trial motions. However, in response to this Court's rule to show cause, Orbit subsequently praeciped for the entry of a judgment, which the Bucks County Prothonotary entered on December 12, 2023. **See** Response to Rule Cause, 12/20/23, Attach. We regard Orbit's premature notice of appeal as having been taken from the subsequent entry of judgment. **See** Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); **see also Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (holding that this Court's appellate jurisdiction is perfected where appellant prematurely appealed from an order denying post-trial relief and judgment was later entered).

On appeal, Orbit raises the following issue for our review:

1. Did the trial court err by failing to apply the pretrial . . . stipulation, and by applying the wrong standard, or misapplying the standard, to hold there was "no evidence" for a *prima facie* case for unpaid invoices?

Orbit's Brief at 2 (some capitalization omitted).

We apply a well-settled standard of review when considering a decision resulting from non-jury trial:

[We must] determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

*Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 862 (Pa. Super. 2019) (internal citation and indentation omitted); *see also Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003) (providing that "we [may] reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record") (internal citation and quotations omitted). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder." *Davis v. Borough of Montrose*, 194 A.3d 597, 605 (Pa. Super. 2018) (internal citation omitted).

Three elements are necessary to plead properly a cause of action for a breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. **See Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Mgmt. Co., LLC**, 126 A.3d 1010, 1018 (Pa. Super. 2015). A party seeking damages for breach of contract must be able to prove such damages with reasonable certainty. **See Printed Image of York, Inc. v. Mifflin Press, Ltd.**, 133 A.3d 55, 59-60 (Pa. Super. 2016).

Orbit contends the trial court erred when concluding Orbit did not meet its burden at trial and by suggesting Orbit presented "no evidence" of damages. Orbit's Brief at 16. Orbit argues the pretrial stipulation and the trial evidence established a *prima facie* case that 3KD failed to pay the balances on the invoices. **See id**. at 19-20. Orbit claims that once it established its *prima facie* case, the burden should have shifted to 3KD to present a defense, but 3KD did not properly plead an affirmative defense based on payment, raise such a defense in the pretrial stipulation, or present any proof of payments at trial. **See id**. at 16-21.[4] Orbit further contends that

_____

[4] Orbit cites to an unpublished United States District Court of New Jersey decision to support the contention that the evidence of invoices and checks received was sufficient to carry a preliminary burden of establishing 3KD carried an amount due. **See** Orbit's Brief at 19-20 (discussing **United States v. APS Contracting, Inc.**, CIV. 11-779-KMW, 2013 WL 3465192, at *2 (D.N.J. July 10, 2013)). It is well settled that federal court decisions do not bind a Pennsylvania court but may be persuasive. **See Carbis Walker, LLP v. Hill, Barth & King, LLC**, 930 A.2d 573, 581 & n.9, 583 & n.16 (Pa. Super.
*(Footnote Continued Next Page)*

the trial court's reasons for finding Orbit's evidence of damages *incredible* either contradicted, or lacked support in, the pretrial stipulation and the trial evidence. *See id*. at 21-29. Lastly, Orbit argues the trial court erred as a matter of law by considering Kundur's payment of restitution following his conviction for stealing from Orbit. *See id*. at 31-32.

The trial court explained it found Orbit's evidence incredible for the following reasons:

> Mandava admitted in his testimony that the pleadings and calculations relating to amounts owed were incorrect. Additionally, Mandava admitted that certain invoice numbers listed in the pretrial stipulation show amounts due however no corresponding invoice exists.
>
> Mandava alleges that balances are due from as far back as 2016; however, notwithstanding these balances owed, Orbit continued to do business with 3KD and continued to deliver goods until 2019. It was not until Mandava discovered that Kundur was stealing from Orbit that he addressed any alleged balance.
>
> Mandava admitted that Kundur stole materials and money from Orbit but denies that Kundur could have manipulated the invoicing system. Mandava also admitted that Kundur had access to the invoice system and removed slabs from Orbit's warehouse without creating an invoice to convert payment for the slab. Certainly, if Kundur had access to the system he could have added or deleted payments to cover up money or materials that he stole from Orbit.
>
> Lastly, Mandava's testimony was not credible against 3KD. He was angry at the District Attorney's disposition of Kundur's criminal case. Mandava believed that Dos Santos of 3KD conspired with Kundur to steal from Orbit. Mandava testified that the District Attorney investigated the case. During the

_____

2007). **APS Contracting** is not persuasive authority because it involved a decision to enter a default judgment, not a decision made after trial. **See APS Contracting**, 2013 WL 3465192, at *1-2.

investigation, Dos Santos cooperated and was interviewed and was present at the criminal trial against Kundur.

Kundur agreed to accept an ARD disposition and as a term of the ARD had to pay one hundred thousand dollars restitution. Mandava continued to testify that Dos Santos owes him money because Dos Santos was a co-conspirator with Kundur. However, it was clear there is no evidence of conspiracy.

* * * *

The running accounting system that Mandava purports to be an exception to the hearsay rule as business records is susceptible of proof. Initially, Mandava had no involvement and therefore, no personal knowledge of Orbit's payment collection system because Kundur was solely responsible for collecting payment from 3KD. All the admitted inaccuracies, alterations or deletions by Kundur, and deals made by Kundur with 3KD to pay in cash make it obvious that other and more satisfactory proof is necessary.

Trial Court Opinion, 11/6/23, at 10-12. The trial court added that it "did not consider [3KD's cash] payment as an affirmative defense because Orbit failed to satisfy its burden of proving an amount due[,]" and did not consider Kundur's restitution payments in its decision for that same reason. *Id*. at 13-14.

Following our review, we conclude Orbit's arguments do not merit relief. Initially, we note Orbit's attempts to cast the trial court's determination as a finding that Orbit failed to raise a *prima facie* case are misplaced. The trial court here did not conclude that Orbit's evidence was insufficient as a matter of law, for example, by entering summary judgment or compulsory nonsuit; rather the trial court, after considering the entirety of the trial evidence, including matters raised in 3KD's cross-examination and case-in-chief, determined Orbit's evidence **was not credible**. **See** Verdict, 5/17/23, at 1;

Trial Court Opinion, 11/6/23, at 13; *see generally Jurich v. United Parcel Serv. of New York, Inc.*, 361 A.2d 650, 651 (Pa. Super. 1976) (noting that once a plaintiff presents a *prima facie* case, it is the function of the finder of fact to pass upon credibility and persuasiveness).  The trial court here credited 3KD's evidence about the course of dealing and course of performance between Orbit and 3KD, and the granite business, generally.  This included Dos Santos's testimony that cash was an acceptable means of payment, that in the ordinary course of business, transactions required payment on delivery because there was no guarantee the wholesaler could get its materials back in the same condition they were delivered, and that Orbit would not have continued to deliver materials if 3KD carried outstanding balances on invoices dating back to 2016.  *See* Trial Court Opinion, 11/6/23, at 3-4; *see also* N.T., 5/8/23, at 88-89.[5]  Based on this record, we conclude there was record

_____

[5] Orbit also claims the trial court erred or abused its discretion because 3KD had no documentation to support Dos Santos's testimony that he paid Kundur in cash.  Even if Dos Santos's general testimony about cash payments would not have sustained an affirmative defense of payment as to each invoice, 3KD was entitled to impeach the general credibility of Orbit's evidence including whether an accounting method of comparing invoices to checks received constituted a reasonably reliable method of assessing damages.  The trial court, as the finder of fact, was entitled to credit all, part, or none of Orbit's evidence.  *See Davis*, 194 A.3d at 605.

Additionally, Orbit contends that the trial court should not have credited any evidence about 3KD's cash payments to Kundur, because Kundur was not authorized to accept payments on behalf of Orbit.  However, the trial court's findings of fact—*i.e.*, that Dos Santos dealt exclusively with Kundur for orders, deliveries, and payments, had paid cash to Kundur upon delivery, and, until July 2019, was unaware of alleged outstanding balances on invoices dating

*(Footnote Continued Next Page)*

support for the trial court's determination that Orbit's evidence—which consisted of invoices, records of payments by checks and credit card payments, and Mandava's accounting of the differences between the amounts owed and the amounts paid—were not credible sources from which to calculate damage.

Our review of the record further confirms Orbit's challenges to the trial court's discrete findings when reaching its credibility determination do not merit relief. *See* Orbit's Brief at 21-29 (challenging the trial court's assertions that (1) Mandava conceded there were discrepancies in his claims for damages; (2) certain invoices did not exist; (3) Kundur could have generated fake invoices or manipulated Orbit's accounting system; and (4) there was no evidence Mandava sent statements for outstanding balances before discovering Kundur's theft). As the finder of fact, the trial court was entitled to weigh and reconcile (1) Mandava's concessions there could be "numbering errors" in Orbit's demand for payments in its complaint, N.T., 5/8/23, at 81; (2) Mandava's admission he incorrectly labeled two demands for $916.16, and $421.86 using an invoice number that did not exist in Orbit's documentation, *see id*. at 79;[6] (3) Mandava's conflicting testimony that Kundur could access

back to 2016—support a finding that Dos Santos could have reasonably believed Kundur had been authorized to accept cash on behalf of Orbit.

[6] Although Orbit asserts the pretrial stipulation barred 3KD from challenging whether Orbit's demands for payments matched the invoices in its documentation, we disagree. Paragraph 25 of the stipulation read:
*(Footnote Continued Next Page)*

Orbit's record keeping system to generate an invoice but could not "fix payments," *see id*. at 44; and (4) Mandava's testimony that while he sent monthly invoice statements to his customers by email, he did not receive any complaints from customers that they had already paid Kundur, *see id*. at 44-45.[7]

Thus, having reviewed the trial court's decision, the record, and Orbit's arguments, we discern no abuse of discretion in the trial court's conclusion Orbit did not meet its burden of persuasion.

Lastly, we conclude Orbit failed to establish reversible error based on its assertions the trial court erred in considering Kundur's restitution. *See* Orbit's

_____

[Orbit] contends, *and [3KD] denies*[,] that after crediting all payments made by 3KD, the following [o]rders for goods delivered remain unpaid either in full or in part as specified [in an ensuing table of invoices with alleged outstanding balances] together with outstanding credit card fees and check return fees for several 3KD checks that bounced[.]

Pretrial Stipulation, 5/5/23, at 5 (emphasis added). 3KD did not stipulate to the accuracy of the tables or amounts alleged unpaid. To the extent, the discrepancy involved a mere typographical error between the invoice number of -808 as listed in the table of invoices the actual invoice number of -798 contained in Orbit's exhibits, *see* N.T., 5/8/23, at 48-51, the weight of such a discrepancy remained for the trial court when assessing the credibility of Orbit's evidence.

[7] The trial court appeared concerned whether Orbit could present evidence it regularly notified customers of outstanding balances, and Mandava testified such notices existed, but he did not have them in court. *See* N.T., 5/8/23, at 41-42. Orbit made no effort to seek leave to keep open the trial record for supplementation. Therefore, no such evidence exists in the record.

- 11 -

Brief at 31 and n.7 (discussing *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard, Inc.*, 777 A.2d 1090, 1095 (Pa. Super. 2001), for the proposition that the imposition of restitution to be paid by a criminal defendant, does not bar the injured party from seeking damages against others). We reiterate that the trial court explained its verdict against Orbit was rooted in its conclusion Orbit "failed to satisfy its burden of proving an amount due," and did not consider restitution. *See* Trial Court Opinion, 11/6/23, at 14. However, when finding Orbit's evidence incredible, the trial court noted that Kundur had been ordered to pay Orbit $100,000.00 in restitution. *See id*. at 11. The trial court continued by asserting Mandava "was angry at the District Attorney's disposition of Kundur's case" because Mandava "believed Dos Santos . . . conspired with Kundur to steal from Orbit[,]" although "there [was] no evidence of conspiracy." *Id*. at 11-12.

Here, the trial court, unlike the trial court in *L.B. Foster*, did not erroneously conclude that restitution acted as a bar to recovery. *See L.B. Foster*, 777 A.2d at 1092, 1095 (stating the trial court incorrectly applied the criminal restitution statute when it concluded the victim of the theft had no recourse against subsequent purchasers of stolen goods where a restitution order had been ordered against the thieves and the victim could not establish damages not covered by the restitution order). Thus, while we agree with Orbit's broad contention that a criminal restitution order was not a cognizable defense or limitation on Orbit's claims against 3KD, there is no indication the

trial court so held.[8]  Thus, we discern no reversible error as the trial court's principal reasons for refusing to credit Orbit's evidence had support in the record.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/21/2025

_____

[8] Even assuming, for the sake of argument, that dissatisfaction with the amount of criminal restitution was an improper factor for assessing Mandava's credibility or motive for commencing Orbit's civil action against 3KD, we discern no reversible error.  The trial court here referenced Mandava's possible improper motives for claiming 3KD carried outstanding balances based on his belief that 3KD participated in Kundur's theft.  Moreover, in light of the other evidentiary bases sustaining the trial court's findings, we conclude any error in referencing restitution did not affect the outcome of trial.