J-S37034-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ORBIT STONES, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ATLANTIS GRANITE, LLC | : | No. 2200 EDA 2023 |

Appeal from the Judgment Entered December 12, 2023
In the Court of Common Pleas of Bucks County
Civil Division at No(s): 2021-02495

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED APRIL 21, 2025**

Orbit Stones, Inc. ("Orbit") appeals from the judgment entered in favor of Atlantis Granite, LLC ("Atlantis") following a non-jury trial in Orbit's action to recover payments for materials it sold to Atlantis.[1] We affirm.

The trial court summarized it factual findings as follows:

. . . [Orbit] is a wholesale distributor of granite. Orbit sells marble slabs to stone fabricators and installers. . . . [Atlantis] is a stone fabricator and was Orbit's customer between 2016 and July[] 2019. Orbit sold and delivered stone slabs to Atlantis, for which, Orbit alleges invoices from 2016 through 2019 have amounts due.

Atlantis became Orbit's customer through Orbit's salesman, Vijay Kundur ("Kundur"). In 2016, Kundur visited Atlantis'[s] shop and introduced himself as Orbit's owner to Atlantis'[s] owner, Ruslan Budilov ("Budilov"). Budilov placed all orders through Kundur. Budilov dealt solely with Kundur to pay an invoice, order

---

[1] Orbit has separately appealed a similar judgment involving sales of materials to a different party, 3KD Marble and Granite, Inc. We address that appeal at J-S37033-24.

materials, or discuss any balance. Although Budilov met Srinivas Mandava, owner of Orbit ("Mandava") in passing at Orbit's warehouse, Mandava never introduced himself as Orbit's owner. Mandava did not collect payments and was only present once during a delivery.

Kundur was solely responsible to ensure deliveries occurred and [sic] to Atlantis and to collect payment for Orbit. When Orbit made deliveries to Atlantis, Kundur would visit Atlantis before the delivery or the following day to collect payment. At delivery, Atlantis received two invoices. Atlantis would unload the material, inspect it, give a check and sign a copy of the invoice for Orbit. Atlantis kept a copy of the invoice until tax season. Atlantis paid the invoices on the same day of delivery or the following day by check or cash.

Generally, this was the accepted practice between Atlantis and Orbit. Kundur had to collect payment before another order could be released to Atlantis because Atlantis had to cut the material to a customer's specifications. Therefore, a cut slab could not be returned to the manufacturer. Kundur would give Budilov a discount for [payment in cash].

If Atlantis received damaged slabs, Budilov would inspect and call Kundur to tell him to pick up the slabs for return. Orbit did not give Atlantis updated invoices to show that return occurred, but Budilov would mark his copy of the invoice as a return.

Atlantis did not receive invoices except those on delivery. Mandava admitted that invoices and records were kept internally. Mandava did not want to "be stepping on [Kundur's] toes" so he never sent statements to Atlantis.

Sometime in July or August of 2019, Mandava discovered that Kundur was stealing money and materials from Orbit. Kundur would take Orbit's material (stone slabs), deliver the slabs to a customer without invoices and keep the money. Mandava contacted the police who then started an investigation.

At this time, Mandava went to Atlantis['s] office to discuss Kundur's criminal investigation and a balance due with Budilov. Budilov showed Mandava some text messages between Budilov and Kundur as evidence that Kundur had asked Atlantis to do work for his family and friends. Mandava told Budilov that he believed there was a balance due. Budilov['s] response was "[i]t's not true." After this meeting, Atlantis never received an invoice from

Orbit showing a balance due. Instead, Orbit continued to do business with Atlantis through 2020 as evidenced by the alleged open invoices.

In October of 2019, the District Attorney's office filed criminal charges against Kundur for theft. . . . Kundur was accepted into ARD with the condition that he would have to pay restitution to [Orbit] in the amount of $100,000[.00].

Mandava decided to credit the restitution towards two different vendors that "cooperated from the beginning with the detectives." Mandava did not credit any restitution to Atlantis because he believes that Atlantis is "part of the theft scheme from the beginning."

* * * *

. . . Orbit does not provide statements to customers. The bookkeeping system is only available on Mandava's computer. Mandava admitted that the internal record system for recording payment does not include what method of payment was used or check numbers. Further, Mandava admitted that the internal record system keeps a running balance which does not account for return of merchandise credits.

* * * *

Mandava . . . did not know Kundur was stealing money and materials until July, 2019. Prior to this discovery, Mandava never sat down with clients to discuss balances due or sent statements for balances due. He discussed lack of payments with Kundur only and relied on Kundur to deal directly with Orbit's customers.

Trial Court Opinion, 11/6/23, at 1-5 (footnotes and some capitalization omitted).

In May 2023, the matter proceeded to a non-jury trial, at which Orbit presented testimony from Mandava and introduced into evidence the pretrial stipulation, as well as documentation supporting Mandava's account of the outstanding balance owed by Atlantis. Mandava, in relevant part, asserted that Orbit did not accept cash payments for delivery, and Atlantis always paid

by check. *See* N.T., 5/9/23, at 11, 15. He testified that because Atlantis had been a good customer, he allowed them to defer payments on deliveries. *See id*. at 18-19. During cross-examination, Atlantis's counsel raised discrepancies regarding three invoices on which Orbit sought damages. *See id*. at 64-67. Specifically, while Orbit's complaint indicated Atlantis had a zero-balance as of April 6, 2017, Orbit included three invoices from before that date when seeking payments. *See id*. at 64. Despite his verification of the complaint, Mandava denied that Atlantis had a zero-balance in April 2017. *See id*. Mandava, and Orbit's counsel, eventually conceded that Orbit would reduce its demands for payments by $3,420, the total amount of the three invoices. *See id*. at 68, 121. Additionally, Atlantis's counsel highlighted that Orbit's accounting still showed Atlantis owed a balance of $913, even though Atlantis returned materials. *See id*. at 71.

During Atlantis's case-in-chief, Budilov testified that he generally paid for each delivery of materials by check or cash whenever he had cash available. *See id*. at 94, 99, 101. Budilov indicated that he had to pay an invoice before Orbit would make the next delivery. *See id*. Budilov noted that Orbit continued to do business with Atlantis even after Mandava discovered Kundur's theft and demanded payments from Atlantis. *See id*. at 98. Budilov denied Mandava's assertions that Mandava presented him with an invoice or statement showing outstanding balances on prior invoices. *See id*. at 98-99.

The trial court found against Orbit and in favor of Atlantis. ***See*** Verdict, 5/17/23, at 1 (("It is the finding of th[e trial c]ourt that [Orbit] failed to satisfy the burden of proof. [Orbit] failed to present credible evidence"). Orbit filed post-trial motions and a supplemental post-trial motion, and Atlantis filed a response. The trial court denied Orbit's post-trial motions and affirmed its verdict. ***See*** Order, 7/24/23, at 1. Orbit filed a notice of appeal within thirty days of the entry of the order denying its post-trial motions[2] and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court authored a Rule 1925(a) opinion stating it found "no credible evidence was presented as to the amounts due" and "Orbit failed to prove each invoice exists and that amount is due." Trial Court Opinion, 11/6/23, at 12.

On appeal, Orbit raises the following issue for our review:

1. Did the trial court err by failing to apply the pretrial fact stipulation, and by applying the wrong standard, or misapplying the standard, to hold there was "no evidence" for a *prima facie* case for unpaid invoices?

_____

[2] Orbit improperly appealed from the order denying its post-trial motions. However, in response to this Court's rule to show cause, Orbit subsequently praeciped for the entry of a judgment, which the Bucks County Prothonotary entered on December 12, 2023. ***See*** Response to Rule Cause, 12/20/23, Attach. We regard Orbit's premature notice of appeal as having been taken from the subsequent entry of judgment. ***See*** Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); ***see also Johnston the Florist, Inc. v. TEDCO Const. Corp.***, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (holding that this Court's appellate jurisdiction is perfected where appellant prematurely appealed from an order denying post-trial relief and judgment was later entered).

Orbit's Brief at 2 (some capitalization omitted).

We apply a well-settled standard of review when considering a decision resulting from non-jury trial:

> [We must] determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue . . . concerns a question of law, our scope of review is plenary.

*Richards v. Ameriprise Fin., Inc.*, 217 A.3d 854, 862 (Pa. Super. 2019) (internal citation and indentation omitted); *see also Widmer Eng'g, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003) (providing that "we [may] reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record") (internal citation and quotations omitted). "Issues of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determination or substitute our judgment for that of the fact finder." *Davis v. Borough of Montrose*, 194 A.3d 597, 605 (Pa. Super. 2018) (internal citation omitted).

Three elements are necessary to properly plead a cause of action for a breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *See Burlington Coat Factory of Pennsylvania, LLC v. Grace*

***Const. Mgmt. Co., LLC***, 126 A.3d 1010, 1018 (Pa. Super. 2015).  A party seeking damages for breach of contract must be able to prove such damages with reasonable certainty.  ***See Printed Image of York, Inc. v. Mifflin Press, Ltd.***, 133 A.3d 55, 59-60 (Pa. Super. 2016).

Orbit contends the trial court erred when concluding Orbit did not meet its burden at trial and by suggesting Orbit presented "no evidence" of damages.  Orbit's Brief at 16.  Orbit argues the pretrial stipulation and the trial evidence established a *prima facie* case that Atlantis failed to pay the balances on the invoices.  ***See id***. at 19-20.  Orbit claims that once it established its *prima facie* case, the burden should have shifted to Atlantis to present a defense, but Atlantis did not properly plead an affirmative defense based on payment, raise such a defense in the pretrial stipulation, or present any proof of payments at trial.  ***See id***. at 16-21.[3]  Orbit further contends that the trial court's reasons for finding Orbit's evidence of damages incredible either contradicted, or lacked support in, the pretrial stipulation and the trial evidence.  ***See id***. at 21-26, 28-30.  Lastly, Orbit argues the trial court erred

---

[3] Orbit cites to an unpublished United States District Court of New Jersey decision to support the contention that the evidence of invoices and checks received was sufficient to carry a preliminary burden of establishing Atlantis carried an amount due.  **See** Orbit's Brief at 18-19 (discussing ***United States v. APS Contracting, Inc.***, CIV. 11-779-KMW, 2013 WL 3465192, at *2 (D.N.J. July 10, 2013)).  It is well settled that federal court decisions do not bind a Pennsylvania court but may be persuasive.  ***See Carbis Walker, LLP v. Hill, Barth & King, LLC***, 930 A.2d 573, 581 & n.9, 583 & n.16 (Pa. Super. 2007).  ***APS Contracting*** is not persuasive authority because it involved a decision to enter a default judgment, not a decision made after trial.  ***See APS Contracting***, 2013 WL 3465192, at *1-2.

as a matter of law by considering Kundur's payment of restitution following his conviction for stealing from Orbit. *See id*. at 26-29.

The trial court explained it found Orbit's evidence incredible for the following reasons:

> Mandava admitted in his testimony that the pleadings and calculations relating to amounts owed were incorrect. Additionally, Mandava admitted that certain invoice numbers listed in the pretrial stipulation show amounts due; however, no corresponding invoice exists.[4]
>
> Mandava admitted that Kundur stole materials and money from Orbit but denies that Kundur could have manipulated the invoicing system. Kundur had access to the invoice system and removed slabs from Orbit's warehouse without creating an invoice to convert payment for the slab. Kundur had access to the system and could have added or deleted payments to cover . . . money or materials he stole from Orbit.
>
> Lastly, Mandava admitted on the record that he thought . . . the restitution awarded was unfair and that he was upset at Atlantis because he believes, unfoundedly so, that they were in collusion with [Kundur].
>
> * * * *
>
> The running accounting system that Mandava purports to be an exception to the hearsay rule as business records is susceptible of proof. Initially, Mandava had no involvement and therefore, no personal knowledge of Orbit's payment collection system because Kundur was solely responsible for collecting payment from Atlantis. All the admitted inaccuracies, alterations or deletions by

---

[4] The trial court's statement that Orbit sought payments on invoices that did not exist was not supported in the evidence in the present case and appears to be an errant reference to the trial testimony in Orbit's separate case against 3KD. Additionally, to the extent the trial court indicated that Kundur could have manipulated Orbit's records, it does not appear the parties or the trial court, in this case, asked Mandava about Kundur's access to Orbit's invoicing or accounting systems.

Kundur, and deals made by Kundur with Atlantis to pay in cash make it obvious that other and more satisfactory proof is necessary.

Trial Court Opinion, 11/6/23, at 10-12. The trial court added that it "did not consider [Atlantis's cash] payment as an affirmative defense because Orbit failed to satisfy its burden of proving an amount due[,]" and did not consider Kundur's restitution payments in its decision for that same reason. *Id*. at 12-13.

Following our review, we discern no merit to Orbit's arguments that the trial court erred or abused its discretion when finding the evidence of the invoices, Atlantis's payments by checks, and Mandava's accounting of the outstanding balances incredible.

Initially, we conclude Orbit's attempts to cast the trial court's determination as a finding that Orbit failed to raise a *prima facie* case are misplaced. The trial court here did not conclude that Orbit's evidence was insufficient as a matter of law, for example, by entering summary judgment or compulsory nonsuit; rather the trial court, after considering the entirety of the trial evidence, including matters raised in Atlantis's cross-examination and case-in-chief, determined Orbit's evidence **was not credible**. **See** Verdict, 5/17/23, at 1; Trial Court Opinion, 11/6/23, at 12; **see generally Jurich v. United Parcel Serv. of New York, Inc.**, 361 A.2d 650, 651 (Pa. Super. 1976) (noting that once a plaintiff presents a *prima facie* case, it is the function of the finder of fact to pass upon credibility and persuasiveness). The trial court here credited Atlantis's evidence about the general course of dealing and

course of performance between Orbit and Atlantis. This included Budilov's testimony that he would pay by check or cash and would have to clear any outstanding balances before Orbit would deliver on the next order. **See** Trial Court Opinion, 11/6/23, at 3; **see also** N.T., 5/9/23, at 93-94, 102.[5] Based on this record, we conclude there was record support for the trial court's determination that Orbit's evidence—which consisted of invoices, records of payments by checks, and Mandava's accounting of the differences between the amounts owed and the amounts paid—were not credible sources from which to calculate damages.

Our review of the record also confirms Orbit's challenges to the trial court's discrete findings when reaching its credibility determination do not merit relief. **See** Orbit's Brief at 21-26, 28-29, 29 n.10, 30 (challenging the trial court's assertions that (1) Mandava conceded there were discrepancies in his claims for damages; (2) Mandava's accounting included invoices pre-dating April 2017, despite his averring and stipulating to the fact that Atlantis had a zero-balance in April 2017; (3) there was no evidence Mandava sent statements for outstanding balances before discovering Kundur's theft; and

_____

[5] Orbit also claims the trial court erred or abused its discretion because Atlantis had no documentation to support Budilov's testimony that he paid Kundur in cash. Even if Budilov's general testimony about cash payments would not have sustained an affirmative defense of payment as to each invoice, Atlantis was entitled to impeach the general credibility of Orbit's evidence including whether an accounting method of comparing invoices to checks received constituted a reasonably reliable method of assessing damages. The trial court, as the finder of fact, was entitled to credit all, part, or none of Orbit's evidence. **See Davis**, 194 A.3d at 605.

(4) Kundur had received cash payments for deliveries). As the finder of fact, the trial court was entitled to weigh and reconcile the evidence that (1) Orbit included claims regarding unpaid invoice that pre-dated Atlantis's zero-balance in April 2017, *see* N.T., 5/9/23, at 64-67; (2) Mandava's accounting system did not include credits for returned materials, *see id*. at 60; (3) the conflicting testimony from Budilov and Mandava concerning how many times they met, whether Mandava demanded payments before discovering Kundur's theft, and whether Mandava presented Budilov with "statements" concerning overdue balances, *see id*. at 23-28 (Mandava testifying that he always sent statements to Atlantis and personally met with Budilov once before the discovery of the thefts), 60-61 (Mandava indicating he sent statements to Kundur to give to Atlantis), 98 (Budilov denying he ever received statements from Orbit), 108 (an Orbit employee testifying to a meeting between Mandava and Budilov after the discovery of Kundur's theft); and (4) whether Budilov reasonably believed Kundur had the authority to accept cash payments, *see id*. at 90-91 (Budilov testifying that he dealt almost exclusively with Kundur and Kundur held himself out as an owner).

Thus, having reviewed the trial court's decision, the record, and Orbit's arguments, we discern no abuse of discretion in the trial court's conclusion Orbit did not meet its burden of persuasion.

Lastly, we conclude Orbit failed to establish reversible error based on its assertions the trial court erred in considering Kundur's restitution. *See* Orbit's Brief at 26-27 and n.9 (discussing *L.B. Foster Co. v. Charles Caracciolo*

***Steel & Metal Yard, Inc.***, 777 A.2d 1090, 1095 (Pa. Super. 2001), for the proposition that the imposition of restitution to be paid by a criminal defendant, does not bar the injured party from seeking damages against others). We reiterate that the trial court explained its verdict against Orbit was rooted in its conclusion Orbit "failed to satisfy its burden of proving an amount due," and did not consider restitution. ***See*** Trial Court Opinion, 11/6/23, at 13. However, when finding Orbit's evidence incredible, the trial court also noted that Kundur had been ordered to pay Orbit $100,000.00 in restitution, which Mandava stated was unfair because he believed Atlantis colluded with Kundur. ***See id***. at 5, 11.

Here, the trial court, unlike the trial court in ***L.B. Foster***, did not erroneously conclude that restitution acted as a bar to recovery. ***See L.B. Foster***, 777 A.2d at 1092, 1095 (stating the trial court incorrectly applied the criminal restitution statute when it concluded the victim of the theft had no recourse against subsequent purchasers of stolen goods where a restitution order had been ordered against the thieves and the victim could not establish damages not covered by the restitution order). Thus, while we agree with Orbit's broad contention that a criminal restitution order was not a cognizable defense or limitation on Orbit's claims against Atlantis, there is no indication the trial court so held.[6] Thus, we discern no reversible error as the trial court's

_____

[6] Even assuming, for the sake of argument, that dissatisfaction with the amount of criminal restitution was an improper factor for assessing Mandava's

*(Footnote Continued Next Page)*

principal reasons for refusing to credit Orbit's evidence had support in the record.

Judgment affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>4/21/2025</u>

---

credibility or motive for commencing Orbit's civil action against Atlantis, we discern no reversible error. The trial court here referenced Mandava's possible improper motives for claiming Atlantis carried outstanding balances based on his belief that Atlantis participated in Kundur's theft. Moreover, in light of the other evidentiary bases sustaining the trial court's findings, we conclude any error in referencing restitution did not affect the outcome of trial.